## Oliver, Administratrix, et al. v. Gill.

1. *Contracts—Enforcements, etc.*—It is for the courts to enforce contracts as parties make them, unless there is some unconscionable or illegal feature in them.

Memorandum.—Foreclosure proceeding. Writ of error to the Circuit Court of Sangamon County to reverse a decree rendered in that court: the Hon. JACOB FOUKE, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 24, 1892.

### STATEMENT OF THE CASE BY THE COURT.

The Central Coal Company had for its officers and managers, Thos. M. Cochran, president, Alex. Nebinger, treasurer, and J. N. Reece, secretary, who were mainly the owners of the property. Geo. N. Brinkerhoff held, as trustee, the title to certain real estate for the benefit of Nebinger, Reece, and Mrs. Louisa M. Cochran, wife of Thos. Cochran, and himself. Said Brinkerhoff and Edward T. Oliver were partners and loan agents.

The coal company borrowed, on the 14th December, 1889, the sum of $1,500, from Oliver, and in evidence of the debt gave him two notes of $750 each, one due March 14, and the other April 16, 1890. To secure these notes Brinkerhoff, trustee, Nebinger, Reece and Mrs. Cochran gave a mortgage on the property held by Brinkerhoff in trust.

On the 31st December, 1889, the coal company borrowed of

Brinkerhoff and Oliver $500, on an unsecured note at sixty days with the understanding that the money should be repaid from a sum which the company was then negotiating for with Chas. W. Gill.

The coal company wished to borrow from Gill $3,000 upon the security of the property held by Brinkerhoff as trustee, but Gill having learned of the lien held by Oliver, was unwilling to take the security subject to said prior lien, and required Oliver to release his claim, of which there was only the note for $750, due April 16, 1890, the other having been paid.

The result of the negotiations was that on the 6th of February, 1890, the loan from Gill to the company was affected. Oliver deeded the land back to Brinkerhoff, and the latter conveyed it to Gill to secure him for the loan of $3,000. As a part of the transaction, Gill, Brinkerhoff, Nebinger and Mrs. Cochrane executed and delivered to Oliver an agreement reciting that, whereas, this — day of February, 1890, Brinkerhoff, trustee, Nebinger and Mrs. Cochrane have executed and delivered to Gill, complainant, deed for their interest as determined by contract in tract of land known as "Woodside Subdivision No. 1," in consideration of $3,000 loan, by which deed Gill is to receive one-half of proceeds of sales of lots from said tract, to be applied as received, to the discharge of said loan; and whereas, said parties and others owe E. T. Oliver $750, balance of $1,500 obligation; "Now, therefore, in consideration of the premises and of one dollar in hand paid, I, Charles W. Gill, hereby agree that one-half the proceeds of any and all lots sold out of the aforesaid tract of land shall be first applied to the payment of said $750 so due the said E. T. Oliver, or such part thereof not otherwise paid or discharged by the parties above mentioned. Said E. T. Oliver shall execute and deliver to said Gill receipts for all payments made as aforesaid on said obligation. This agreement is made by virtue of the right vested in said Gill by the deed of conveyance aforesaid." Dated February 6, 1890, and signed by Brinkerhoff, trustee; Nebinger, Mrs. Cochrane and Charles W. Gill.

The $500 debt of December 31, 1889, due Brinkerhoff and Oliver, was paid out of the money furnished by Gill.

This indebtedness to Gill, which was evidenced by a note for $3,000, signed by Nebinger and Mrs. Cochrane, due February 4, 1891, not having been paid, and no lots having been sold out of the land held by Gill as security, the latter filed his bill in chancery, treating the said deed to him as a mortgage and asking for relief, etc., as a mortgagee. Nebinger, Brinkerhoff and the Cochranes were made parties and filed their answers, alleging, among other things, that by reason of the facts above stated, Oliver was entitled to a prior lien over Gill as to one-half of the premises to secure payment of the $750 note which he still held.

Oliver was admitted as a party defendant on his application, and having answered the bill, filed his cross-bill, asking that he be allowed a first lien as to one-half the property for the payment of his claim. The cause was heard and a decree was entered, finding the amount due Gill for the principal and interest of his note and taxes paid, etc.; in default of which the premises were to be sold and proceeds applied in discharge of the indebtedness, and dismissing the cross-bill.

## PLAINTIFFS' BRIEF.

Mortgages as between the parties are valid without acknowledgment. Roane v. Baker, 120 Ill. 309. Parol evidence is admissible to show the true character of a mortgage and for what purpose and what consideration it was given. 1 Jones on Mortgages, Sec. 384. Parol evidence is admissible to identify the debt intended to be secured. Melvin v. Fellows, 33 N. H. 401. A mortgage does not depend on the kind of indebtedness secured, the form in which the indebtedness exists being immaterial. 1 Jones on Mortgages, Sec. 264–5; Workman v. Greening, 115 Ill. 479. A mere change in the form of the evidence of the debt will not in any manner affect the lien created by a mortgage. Citizens National Bank v. Dayton, 116 Ill. 257. A new note was taken in this case. Darst v. Bates, 51 Ill.

Oliver v. Gill.

439.   Original notes were taken up and new notes given in this case also.   Equity only looks to the substance and not to mere form.   A mere change in the form of debt does not satisfy a mortgage to secure it.   Flower v. Elwood, 66 Ill. 438.   When parties make a contract which lacks the formal requisites of a mortgage but is intended as a security for a debt, equity will give effect to their intention, and such instruments are called equitable mortgages.   1 Jones on Mortgages, Secs. 162–168, Chap. V.

Conkling & Grout, attorneys for plaintiffs in error.

### Defendants' Brief.

The law is well settled that a promise to pay a debt out of a designated fund does not give an equitable lien upon the fund or operate as an equitable assignment thereof. Rodgers v. Hosack's Executors, 18 Wend. (N. Y.) 319; Christmas v. Russell, 14 Wall. (U. S.) 69; Trist v. Child, 21 Id. 441; Williams v. Ingersoll, 89 N. Y. 518; Cook v. Black, 54 Iowa, 693.

If there was improper evidence in the record, a court of chancery will not reverse for that reason, if there is enough competent evidence to sustain the decree.   Smith v. Long, 106 Ill. 485.

Patton & Hamilton, solicitors for defendants in error.

### Opinion by the Court.

It is assigned as error that the cross-bill was dismissed and the prior lien therein set up was denied, and this presents the only question arising for our determination.   It may be admitted that the obligations held by Oliver and Gill were really the debts of the coal company, but this does not seem to affect in any especial way the rights of the parties.

Oliver held a first lien to secure his debt, and in order that the company by its managing stockholder might obtain a loan from Gill, out of which the unsecured debt of $500

to. Brinkerhoff and Oliver was to be paid, the latter released his security by deeding the land back to Brinkerhoff, and in place of it took the security expressed in the agreement signed by Gill and the other parties. No doubt it was expected that a considerable demand for lots would arise, and from the proceeds of sales of one-half of such lots, the balance due Oliver would be realized.

It is also probable that Gill supposed there would be enough derived from the enhanced value of the property, when sold in lots, to make him secure, after devoting one-half of the proceeds, as far as necessary, to the satisfaction of Oliver's claim; but no lots were sold, and the contingency provided for in the agreement has not happened. It is for the courts to enforce contracts as parties make them unless there is some unconscionable or illegal feature therein. Nothing of that sort appears.

The contract did not provide, in terms or by implication, that in case no lots were sold Oliver should have a first lien, or any lien, upon one-half of the property. Had his cross-bill prayed for a lien subordinate to that of Gill, perhaps he might have been relieved to that extent, but his assertion of a prior lien was unfounded, and properly rejected.

We deem it unnecessary to refer to the oral testimony, or to the arguments of counsel in detail. No doubt Oliver felt sufficient reason for changing his position, and no doubt Gill understood the extent of Oliver's lien under his mortgage; but he did not choose to take a lien subject to the mortgage, and as between Gill and Oliver, that mortgage was extinguished, and it was so intended. It is not to be supposed that either party expected Oliver to realize anything until Gill was fully paid, except from lot sales. This was the fund expressly provided, from which, and from which only, could Oliver receive anything on his claim. This fund failed, and with it Oliver's security as against Gill. We are of the opinion the decree should be affirmed.